15 McKAY PLACE REALTY CORP., Dolly Barksdale, Sheldon Crutchfield, Chet Dash, Martin Carson and Adam Keller, Plaintiffs,

v.

AFL–CIO, 32B–32J, SERVICE EMPLOYEES INTERNATIONAL UNION, Gus Bevona, President, and Thomas Latimer, Contract Director of said Union, Joseph Simpson, Isaac Bornweld, Roosevelt Singleton and Dario Nunez, Defendants.

No. 82 Civ. 1846.

United States District Court,
E.D. New York.

Dec. 23, 1983.

Frederick Schwartz, New York City, for plaintiffs.

Michael Geffner, Israelson, Manning & Raab, New York City, for defendants.

## MEMORANDUM AND ORDER

GLASSER, District Judge:

Plaintiff, 15 McKay Place Realty Corp., a New York corporation, and five individual plaintiffs[1] instituted this action against defendant AFL–CIO, Local 32B–32J, Service Employees International Union ("Union") and six individual defendants[2] in the Supreme Court for the State of New York, Kings County, on June 21, 1982, seeking relief from alleged violent illegal picketing and other tortious conduct of defendants. In June 1982,[3] defendants removed this action to this Court pursuant to 28 U.S.C. § 1446,[4] alleging original federal jurisdic-

---

1. The five individual plaintiffs are the present employees of plaintiff Corporation, who were employed on or after May 26, 1982. Petition for Removal, Exh. A ("Complaint") at ¶ 11.

2. Defendant Gus Bevona is the President of the defendant Union. Joseph Simpson, Isaac Bornweld, Roosevelt Singleton and Dario Nunez are members of the Union. Petition for Removal, ¶ 5. Thomas Latimer is employed by the Union as Contract Director. *Id.; see* National Labor Relations Board Charge Against Employer, Exh. B to Petition for Removal ("NLRB Complaint").

3. The actual date of *effective* removal by defendants is unclear. Pursuant to 28 U.S.C. § 1446(e), removal is effective after the petition is filed with the state court and notice thereof is served on the opposing parties. *See infra* note 4. Defendants here claim that they effectuated removal in compliance with this section on June 25, 1982. Affidavit of Michael Geffner, ¶ 7 ("Geffner Affidavit"). If true, such removal would have stayed any action by the State Supreme Court, including its hearing on the order to show cause for injunctive relief returnable June 28, 1982.

Plaintiffs state that removal was effectuated on June 28, 1982. They claim that on that date, the state court granted the order to show cause by default and that the Notice of Removal was

served on plaintiffs later that same day. Affidavit in Support of Motion to Remand of Frederick Schwartz dated July 22, 1982, ¶¶ 2–3 ("Schwartz Affidavit II"); Reply Affidavit of Leon ·Port at ¶ 4 ("Port Affidavit"). Defendants have not submitted proof of service on plaintiffs or the state court; neither have plaintiffs submitted proof of the alleged default judgment in state court.

Although the above allegations render the issuance or validity of the alleged state court injunction unclear, I do not find it necessary to consider this fact in deciding this motion.

I note that attorney for plaintiffs, Frederick Schwartz, has submitted two very similar affidavits in support of the motion to remand. The affidavit cited above as Schwartz Affidavit II refers to the July 22, 1982 Affidavit; the earlier July 9, 1982 Affidavit will hereinafter be referred to as Schwartz Affidavit I.

4. Section 1446 of Title 28 governs the procedure for removal of civil or criminal actions from a state court to the United States District Court for the district within which the action is pending. Removal of a civil action requires the filing of a verified petition pursuant to 28 U.S.C. § 1446(a) and (b) and the posting of a surety bond under § 1446(d). Section 1446(e) further requires:

Promptly after the filing of such petition for the removal of a civil action and bond the

tion under the Labor Management Relations Act ("LMRA"), 29 U.S.C. §§ 141–197, and sections 8(a)(1), (3) and (5) of the National Labor Relations Act ("NLRA"), 29 U.S.C. §§ 151–168. Plaintiffs now move for an order remanding the case to the state court. For the reasons stated below, plaintiff's motion is granted.

*Facts*

Plaintiff, 15 McKay Place Realty Corp. ("Corporation") was the mortgagee of an apartment building located at 255 Eastern Parkway in Brooklyn. After the mortgagor, Eastern Parkway Corporation, defaulted, the Corporation purchased the building at a foreclosure sale on May 26, 1982. The prior owner of the building, through its agent, apparently had been party to a collective bargaining agreement with defendant Union under which the individual defendants performed services at that building. When it acquired ownership of the building, the plaintiff Corporation discharged the individual defendants. As to its potential contractual relationship with defendant Union, plaintiff Corporation alleges in the complaint:

> SIXTH: That said plaintiff corporation, at no time prior to May 26, 1982, owned said building, nor entered into any agreement with the former owner (mortgagor) to purchase the said building but came into possession and title of said building by being the successful bidder and purchaser of said building, at public auction, held pursuant to a duly constituted foreclosure sale.
>
>   *   *   *   *   *   *
>
> TENTH: .... that the defendants and all of them are not in privity with the plaintiff either by contract with the plaintiff and plaintiffs have had no transaction with the foreclosed mortgagor or previous owner of said apartment building.

Shortly thereafter, the discharged employees began picketing in front of plaintiffs' building. Plaintiffs allege that defendants illegally congregated in large numbers, interfered with the tenants' and new employees' ingress and egress to the building, harassed the tenants and new employees, and otherwise variously caused damage to the premises and to an adjacent building owned by plaintiffs. Defendants contend, on the other hand, that the picketing defendants were engaged in activity which is protected under the LMRA. Plaintiffs seek injunctive relief.

*Procedural Background*

This case had a confusing procedural beginning. Prior to plaintiffs' institution of this suit in state court by filing and service of a complaint and order to show cause on June 21, 1982, defendant Union had filed charges against the Corporation with Region 29 of the National Labor Relations Board ("NLRB") on June 7, 1982. The hearing on the order to show cause was scheduled for June 25, 1982 and defendants filed their petition for removal with this Court on that date.

On July 21, 1982, the NLRB filed a formal complaint against the plaintiff Corporation ("NLRB Complaint"). The NLRB Complaint designated January 10, 1983 as a hearing date on the charges contained therein. That hearing was since adjourned to January 16, 1984.

*Discussion*

Section 1441 of Title 28 governs the type of actions which may be removed from state to federal court. In the context of the instant case, the relevant part of Section 1441 reads:

> (b) Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties.

Generally, a cause is removable only if a federal question appears on the face of the complaint. *Gully v. First National Bank*, 299 U.S. 109, 113, 57 S.Ct. 96, 98, 81 L.Ed. 70 (1966). In *Gully*, the Supreme Court held:

> such State court, which shall effect the removal and the State court shall proceed no further unless and until the case is remanded.

---

defendant or defendants shall give written notice thereof to all adverse parties and shall file a copy of the petition with the clerk of

To bring a case within the statute [28 U.S.C. § 1441], a right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action .... The right or immunity must be such that it will be supported if the Constitution or laws of the United States are given one construction or another.... A genuine and present controversy, not merely a possible or conjectural one, must exist with reference thereto, ... and the controversy must be disclosed upon the face of the complaint, unaided by the answer or the petition for removal.... Indeed, the complaint itself will not avail as a basis of jurisdiction insofar as it goes beyond a statement of the plaintiff's cause of action and anticipates or replies to a probable defense. 299 U.S. at 112–13, 57 S.Ct. at 97–98. A federal court may, however, attempt to ascertain whether a plaintiff's claim is state or federal in nature if this is not obvious from the face of the complaint. 14 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure (1976), § 3722 at 561–62, 564, 566.

■ A plaintiff is generally the master of his claim. *The Fair v. Kohler Die & Specialty Co.*, 228 U.S. 22, 25, 33 S.Ct. 410, 411, 57 L.Ed. 716 (1913) and when his claim can be based upon *either* a state or federal ground, he "is normally free to ignore the federal question and pitch his claim on state ground." *Hearst Corp. v. Shopping Center Network, Inc.*, 307 F.Supp. 551, 556 (S.D.N.Y.1969); *see also* 1A Moore's Federal Practice, ¶ 0.160, at 185 (2d ed. 1979). In such a case, the federal court may not look beyond the complaint in its attempt to ascertain the nature of plaintiff's claim. When, as here, the complaint is ambiguous as to the federal or state nature of the

claim, a plaintiff may restrict himself to a state cause of action in a timely motion to remand. *See Vitarroz Corp. v. Borden, Inc.*, 644 F.2d 960 (2d Cir.1981). However, "where Congress has explicitly said that the exclusive source of a plaintiff's right to relief is to be federal law, it would be unacceptable to permit that very plaintiff, by the artful manipulation of the terms of a complaint, to defeat a clearly enunciated congressional objective." *Hearst Corp. v. Shopping Center Network, Inc.*, 307 F.Supp. at 556.

■ When a plaintiff's purported state law claim has been preempted by federal law, federal jurisdiction will lie. *Billy Jack for Her, Inc. v. New York Coat, Suit, Dress, Rainwear & Allied Workers' Union Local 1–35*, 511 F.Supp. 1180, 1186 & n. 8 (S.D.N.Y.1981) (*"Billy Jack I"*). Furthermore, federal removal jurisdiction is derivative or dependent on state court jurisdiction. *Id.* at 1188. Therefore, should the federal district court determine that the case is subject to exclusive federal jurisdiction or that a body other than the state or federal court has exclusive jurisdiction, the district court must dismiss the case. *Id.; see also id.* at 1192–93. Finally, should a complaint filed in state court state a claim which is preempted by federal law as well as a pure state claim, the state claim may be removable in accordance with the doctrine of pendent jurisdiction or under 28 U.S.C. § 1441(c).[5] *Billy Jack for Her, Inc. v. New York Coat, Suit, Dress, Rainwear & Allied Workers' Union Local 1–35*, 515 F.Supp. 456, 458 (S.D.N.Y.1981) (*"Billy Jack II"*). *See also United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966).

In their petition for removal, defendants allege original federal jurisdiction because (1) the Corporation is engaged in interstate commerce;[6] (2) plaintiffs seek to enjoin

---

5. 28 U.S.C. § 1441(c) provides:

Whenever a separate and independent claim or cause of action, which would be removable if sued upon alone, is joined with one or more otherwise nonremovable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all

matters not otherwise within its original jurisdiction.

6. Defendants contend that plaintiff Corporation is engaged in interstate commerce in support of their argument that only the NLRB has jurisdiction to adjudicate the lawfulness of the Union's picketing activities. Defendants' Memorandum of Law at 4. The NLRB would indeed have

activity protected under Section 7 of the LMRA, 29 U.S.C. § 157,[7] which activity is (3) in response to violations by the Corporation of Sections 8(a)(1), (3) and (5) of the LMRA, 29 U.S.C. § 158.[8] Petition for Removal, ¶ 6. On the other hand, plaintiffs' motion to remand asserts that the Corporation is not engaged in interstate commerce, Schwartz Affidavit II at ¶ 9, and that the state court has primary jurisdiction to adjudicate plaintiff's claim under *Kay-Fries, Inc. v. Martino,* 73 A.D.2d 342, 426 N.Y. S.2d 304 (2d Dep't 1978), *appeals dismissed,* 50 N.Y.2d 1056, 410 N.E.2d 750, 431 N.Y.S.2d 817 (1980); 51 N.Y.2d 994, 417 N.E.2d 92, 435 N.Y.S.2d 979 (1980).

jurisdiction if this action was concerned with activity that is arguably subject to Section 7 or 8 of the LMRA. *See infra* p. 1428. However, because this action seeks to enjoin violent picketing, *see infra,* it is unnecessary to determine the actual nature of the plaintiff Corporation's business. I note in passing, however, that the NLRB Complaint indicates a finding that the plaintiff Corporation is engaged in interstate commerce. NLRB Complaint at 4(a)(b).

7. Section 7 of the LMRA, 29 U.S.C. § 157, provides:

Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities, for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section 158(a)(3) of this title.

8. Sections 8(a)(1), (3) and (5) of the NLRA, 29 U.S.C. § 158, provide:

(a) It shall be an unfair labor practice for an employer—

(1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title;

\* \* \* \* \* \*

(3) by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization; Provided, That nothing in this subchapter, or in any other statute of the United States, shall preclude an employer from making an agreement with a labor organization (not established, maintained, or assisted by any action defined in this subsection as an unfair labor

In *Kay-Fries v. Martino, supra,* the appellate court reviewed the trial court's issuance of an injunction against a union for tortious conduct committed incident to a strike against the plaintiff employer. In this suit brought under Section 807 of the New York Labor Law,[9] the appellate division specifically held that the statutory requirement that findings of fact must be filed or recited in the record was not a jurisdictional prerequisite to the issuance of the injunction. 426 N.Y.S.2d at 308, 309. The *Kay-Fries* court cited a decision of the New York Court of Appeals which interpreted the predecessor of Section 807(1) as follows:

practice) to require as a condition of employment membership therein on or after the thirtieth day following the beginning of such employment or the effective date of such agreement, whichever is the later, (i) if such labor organization is the representative of the employees as provided in section 159(a) of this title, in the appropriate collective-bargaining unit covered by such agreement when made, and (ii) unless following an election held as provided in section 159(e) of this title within one year preceding the effective date of such agreement, the Board shall have certified that at least a majority of the employees eligible to vote in such election have voted to rescind the authority of such labor organization to make such an agreement; Provided further, That no employer shall justify any discrimination against an employee for nonmembership in a labor organization (A) if he has reasonable grounds for believing that such membership was not available to the employee on the same terms and conditions generally applicable to other members, or (B) if he has reasonable grounds for believing that membership was denied or terminated for reasons other than the failure of the employee to tender the periodic dues and the initiation fees uniformly required as a condition of acquiring or retaining membership;

\* \* \* \* \* \*

(5) to refuse to bargain collectively with the representatives of his employees, subject to the provisions of section 159(a) of this title.

9. N.Y.Lab.L. § 807 (McKinney 1977) provides, in relevant part:

1. No court nor any judge or judges thereof shall have jurisdiction to issue any restraining order or a temporary or permanent injunction in any case involving or growing out of a labor dispute, as hereinafter defined, except after a hearing, and except after findings of all the following facts . . .

The effect of that statute is to prevent courts from enjoining peaceful picketing. It was never intended to deprive the Supreme Court [of New York] of jurisdiction to enjoin dangerous, illegal acts which constituted disorderly conduct and breach of the peace.

426 N.Y.S.2d at 308, *citing Busch Jewelry Co. v. United Retail Employees' Union Local 830*, 281 N.Y. 150, 156, 22 N.E.2d 320, 322. *Kay-Fries* thus appears to provide a state law remedy for plaintiffs, barring preemption by federal law.

■ As stated above, defendants urge that federal jurisdiction must lie because their alleged activity is protected under Section 7 of the LMRA, 29 U.S.C. § 157. *See supra* note 7. While defendants' contention here appears to be a defense which would preclude removal under *Louisville & Nashville R.R. Co. v. Mottley*, 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908), and *Gully, supra,* it is well settled that "[w]hen an activity is arguably subject to Section 7 or Section 8 of the Act, the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted." *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 244–45, 79 S.Ct. 773, 779–80, 3 L.Ed.2d 775 (1959). State courts may entertain tort claims in connection with picketing if the risk that such state adjudication would interfere with federal policy is minimal. *Rodriguez v. Bar-S Food Co.*, 539 F.Supp. 710, 714–15 (D.Colo.1982), *citing, e.g., Youngdahl v. Rainfair, Inc.*, 355 U.S. 131, 139–40, 78 S.Ct. 206, 211–12, 2 L.Ed.2d 151 (1957) (labor related violence and threats thereof could be enjoined by state court, although peaceful picketing could not). The view that a claim alleging violent picketing is not preempted by federal law and should be adjudicated by the state court has been pronounced elsewhere in this Circuit. *Bil-*

*ly Jack II*, 515 F.Supp. at 457–59. *See also Palm Beach Co. v. Journeymen's & Production Allied Services of America & Canada International Union Local 157*, 519 F.Supp. 705, 707 n. 3, 713 (S.D.N.Y. 1981).

■ Where the record indicates that violence or threats of violence attendant to picketing are "so enmeshed" that the violence can only be prevented by enjoining *all* picketing, a state court may enjoin such activity. *Acme Markets Inc. v. Retail Store Employees Union Local 692*, 231 F.Supp. 566, 571 (D.Md.1964). However, if such enmeshment is not demonstrated, the state court enters the "pre-empted domain of the National Labor Relations Board" if it attempts to enjoin peaceful picketing. *Youngdahl v. Rainfair, supra*, 355 U.S. at 139, 78 S.Ct. at 211. *See also Acme Markets, supra*, 231 F.Supp. at 571; *Norton v. United Mine Workers*, 387 F.Supp. 50, 52–53 (W.D.Va.1974).

In the instant case, plaintiffs allege that defendants' picketing was accompanied by (1) interference with the tenants' and new employees' ingress and egress to the building; (2) abusive language and threats directed toward those employees; (3) a cutting of electrical wires in the building; (4) emptying of the building's garbage onto the premises; and (5) feeding of 800 gallons of water into the oil tank of an adjacent building owned by the same stockholders as those of plaintiff Corporation. Complaint ¶¶ 7, 8.

■ Although the allegations of violent acts and threats thereof do not rise to the severity or frequency of those alleged in *Youngdahl, supra*, this case is similar enough to warrant the applicability of *Youngdahl* and *Billy Jack II*. I therefore find that the Supreme Court for Kings County does have jurisdiction to enjoin any acts not attributable to peaceful picketing that it finds are being committed by defendants.[10]

10. Any attempts by plaintiffs to enjoin peaceful picketing by defendants are within the exclusive jurisdiction of the NLRB. *See International Longshoremen's Association, Local 1416 v. Ariadne Shipping Co.,* 397 U.S. 195, 90 S.Ct. 872, 25 L.Ed.2d 218 (1970). Plaintiffs here urge that they were not bound to any kind of agreement

with defendants because they did not succeed to the obligations of the mortgagor of 255 Eastern Parkway, *see supra* p. 1424, although plaintiffs concede:

8. ... the former employees were not discharged because they belong to the Union;

*Conclusion*

For the reasons set forth above, plaintiffs' motion to remand this case to the Supreme Court for Kings County is granted. The defendants are directed to pay all costs and disbursements incurred by reason of these removal proceedings pursuant to 28 U.S.C. § 1446(d).[11]

Case remanded.

SO ORDERED.

they were discharged because the corporation, not a successor in interest, has their own employees and wanted them in the place of the former employees. The plaintiff corporation states that *if* it was the successor in interest and had privity of relationship with the former owner, the corporation would have honored the union contract....

\* \* \* \* \* \*

10. The union and its members would be protected by Section 7 of the Act if they were employees of the corporation or of its former owner, providing the present owner was a successor in interest by transfer, sale or assignment, which it is not.

Schwartz Affidavit II (emphasis in original).

The initial determination of successorship, however, lies not within plaintiff's own power, but within the NLRB's jurisdiction. *See, e.g., NLRB v. Hudson River Aggregates, Inc.,* 639 F.2d 865, 869 (2d Cir.1981); *Saks & Co. v. NLRB,* 634 F.2d 681, 684 (2d Cir.1980). It is apparent from the NLRB Complaint, ¶ 9(g), (i), that the NLRB *does* consider the plaintiff Corporation to be a successor to Eastern Corp. and therefore duty bound to bargain with the incumbent defendant Union. *See NLRB v. Burns Security Services,*

406 U.S. 272, 281, 92 S.Ct. 1571, 1579, 32 L.Ed.2d 61 (1972) (successor employer must bargain with incumbent union but is not bound by substantive terms of prior collective bargaining agreement). Therefore, although the NLRB Complaint does not precisely deal with the instant case, it is clear that the Board would be the proper tribunal to adjudicate any dispute over peaceful picketing in the instant case. That is, if, after consideration by the state court on remand, it becomes necessary to plaintiff's claim to evaluate whether defendants' picketing is "arguably subject" to ¶ 7, such determination will be within the jurisdiction of the NLRB. If the Board's exclusive jurisdiction was required by the instant facts, this Court would be constrained to dismiss the case. *Billy Jack I,* 511 F.Supp. at 1188, 1192–93.

11. 28 U.S.C. § 1446(d) provides in part:

Each petition for removal of a civil action ... shall be accompanied by a bond ... conditioned that the defendant or defendants will pay all costs and disbursements incurred by reason of the removal proceedings should it be determined that the case was not removable or was improperly removed.